**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.  14-21480-CIV-BLOOM/VALLE**

ANDRE GREGORY, PAVEL HERNANDEZ,
and EDUARDO BERMUDEZ,

      Plaintiffs,

v.

QUALITY REMOVAL, INC. and
GIOVANNY GARCIA,

      Defendants.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART</u><br><u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

THIS CAUSE came before the Court on Defendants' Motion for Summary Judgment with Incorporated Memorandum of Law, ECF No. [22], filed on August 12, 2014.  Plaintiffs filed the instant action seeking unpaid minimum and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  The Court has carefully reviewed the record, the parties' briefs, and the applicable law.

## I.    BACKGROUND.

Between 2013 and 2014, Plaintiffs worked as pickup and delivery drivers for Quality Removal, Inc., a cadaver transport service.  Plaintiffs were tasked with picking up the bodies of the deceased from homes, hospitals, and other locations, and transporting them to funeral homes.  Plaintiffs also transported bodies to the Miami International Airport to be flown to other states or countries.  Plaintiffs assert that they often worked in excess of sixty hours per week, without receiving any overtime pay.

1

Defendants concede that Quality Removal scheduled the Plaintiffs for twelve-hour shifts, four to six days per week and  that the Plaintiffs were technically scheduled for more than forty hours per week.  Defendants also concede that they did not pay Plaintiffs overtime.  Defendants assert, however, that Plaintiffs did not actually spend their full schedules working.  Because Quality Removal operates out of Garcia's home, and has no freestanding brick-and-mortar location, Plaintiffs began their shifts at home.  When a Plaintiff's shift began, typically at either 7 a.m. or 7 p.m., the Plaintiff would call or send a text message to Garcia and report that he was ready to begin work.  Then, the Plaintiff would await a pickup order.  Defendants contend that the Plaintiffs spent much of their time at home, relaxing or engaging in personal matters, while they awaited pickup orders.[1]  ECF No. [22], Defs. Mtn. at 5.  Defendants claim that the Plaintiffs spent less than 40 hours per week actually engaging in the business of picking up and delivering bodies.

Plaintiffs dispute Defendants' characterization of their work days.  Plaintiffs allege that they spent more than forty hours per week engaged in the actual transport of bodies in and around Miami-Dade County.  Plaintiffs testified in their depositions that they conducted an average of six to eight pickups per twelve-hour shift, and that these pickups could easily take several hours each.  ECF No. [26-2], Bermudez Decl.; ECF No. [26-1], Gregory Decl.  Plaintiff

---

[1] Defendants repeatedly allege that the Plaintiffs conceded to regularly engaging in numerous personal activities during their scheduled shifts.  The record does not entirely support Defendants' factual claims in this regard.  *See* ECF No. [26-3], Gregory Dep. at p. 48–49 ("Q: Well, you want time and a half for the entire shift . . . whether you were making love, whether you were cooking, whether you were looking at the computer, talking to someone on the phone, or whether you were transporting bodies. A: Okay . . . . Q: Okay.  Because when you say working regardless, it's sort of hard to convince someone that if you're at home on the computer playing Pac-Man, you know, that you're working regardless.  A: Okay.  Q:  No, you're not.  You're playing Pac-Man on the computer."); ECF No. 26-4, Bermudez Dep. at 145 ("Q: Well, under the Fair Labor Standards Act, you are only entitled to time that is compensable under the statute, time that you've actually spent working, not time when you're at home playing Call of Duty and engaging in personal business . . . . A: I don't understand the question.  Q: You just don't understand it, huh?  A: Is that a question?  Q:  Yeah, that's a question.  A: What's the question?").  It is not clear from the record  that Plaintiffs actually admitted to these activities, rather than following along with counsel's hypotheticals and legal arguments.

Andre Gregory testified that he could count on one hand the number of shifts in which he received an insignificant number of pickup orders.  Plaintiff Eduardo Bermudez testified that, on slow days, Garcia would ask him to run personal errands.  Plaintiffs also testified that Garcia would frequently extend their shifts beyond the twelve scheduled hours to accommodate additional pickup requests, as they came in, and also would frequently call them during their time off with specific jobs.[2]

Plaintiffs also dispute Defendants' characterization of their waiting time, and argue that Quality Removal's restrictions on the Plaintiffs' movements prevented them from making any meaningful personal use of this time, even though they technically spent it at home.  Though Quality Removal provided the Plaintiffs with transport vans, the Plaintiffs were not allowed to use the vans for any personal errands, and thus they could not leave their homes during their shifts, except for work-related purposes.  In fact, Garcia even installed GPS monitoring devices on the vans to ensure that his drivers did not use them for any purposes other than body transport.  The Plaintiffs were expected to respond immediately to any calls for pickups— Plaintiff Andre Gregory testified that Garcia fired drivers who failed to do so.  And, because the Plaintiffs had to leave immediately following a pickup call, they were required to spend their entire shift in uniform.   Plaintiffs allege that, considering their scheduled shifts and extra pickups outside of their shifts, they frequently worked in excess of 60 hours per week, without receiving any overtime pay.  ECF No. [1], Compl. at ¶¶ 29–32.

Another factual dispute revolves around the intrastate/interstate character of Quality Removal's operations.  Quality Removal's drivers and transport vans are licensed to operate only

---

[2] *See* ECF No. 26-4, Bermudez Dep. at 149–51 ("A: Guess what?  That call was all the way to Homestead Hospital.  I had to drive over there with traffic and everything.  By the time I finished that call, guess what time it was?  Q: I don't know.  What time? A: 10:00 at night.. . . Q: 10:00 at night.  Okay.  So on one occasion, you worked three hours past your shift.  A:  That's not one occasion.  Q: What do you want, a cookie?").

in Florida, and the Plaintiffs never physically transported a body into another state.  Sometimes, though, Quality Removal's drivers dropped bodies off or picked bodies up at the Miami International Airport.  Plaintiff Eduardo Bermudez testified in his deposition that, approximately five times per week, he delivered bodies to the airport, where the bodies were loaded onto airplanes and shipped to other states, including New York and California.  Plaintiff Andre Gregory also testified that he knew that Quality Removal dropped off bodies at the airport, but he could not recall if he personally dropped any off.

Defendants do not dispute that they sometimes receive orders to deliver bodies to the airport, and these bodies are shipped to other states and countries.  In fact, in his deposition, Defendant Garcia identified a receipt for a body shipped to Brazil that had been transported to the airport by a Quality Removal driver.  Defendants do, however, dispute the frequency of airport pickups and deliveries, characterizing them as an insubstantial portion of Quality Removal's overall business.

On April 24, 2014, Plaintiffs filed the instant Complaint, alleging that Defendants failed to pay minimum wages and overtime compensation in violation of the FLSA.[3]

## II.    LEGAL STANDARD.

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] The parties may support their positions by citation to the record, including *inter*

---

[3] A third plaintiff, Pavel Hernandez, was voluntarily dismissed from this action.  *See* ECF No. [23].

[4] Defendants couch their motion for summary judgment in the terminology of a jurisdictional challenge.  *See* ECF No. [22], Defs. Mtn. at 7.  However, the Eleventh Circuit has directed that, when a jurisdictional challenge goes to the merits of a claim, as it clearly does here, "the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citations and quotations omitted).  Therefore, the court will resolve Defendants' motion under the burden-shifting structure of a Rule 56 summary judgment analysis.  *See Obando v. M & E Investment Properties, Inc.*, No. 11-cv-20318, 2011 WL 4387238 (S.D. Fla. Sept. 20, 2011)

*alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in

---

(noting that, under the FLSA, facts supporting the application of the statute also function as elements of substantive claims).

the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### III.     ANALYSIS

The Fair Labor Standards Act requires that an employee who falls within its scope must be paid overtime for all time worked in excess of 40 hours per week.  29 U.S.C. § 207(a).  "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

To invoke the FLSA's protections, "an employee must first demonstrate that he is 'covered' by the FLSA."  *Id.*  The courts have identified two avenues for coverage.  Under "enterprise coverage," an employee is protected by virtue of working for an enterprise that is engaged in "commerce" within the meaning of the statute, and that has at least $500,000 in gross annual sales.  *Id.* at 1298–99, citing 29 U.S.C. § 207(a)(1).  And an employee who works for a company that does not meet the statutory criteria for "enterprise coverage" may nevertheless be covered as an individual, if "he regularly and 'directly participates in the actual movement of persons or things in interstate commerce.'"  *Id.* (citations omitted).

Defendants argue that Plaintiffs have not demonstrated that either enterprise or individual coverage applies, on the facts of this case.  Defendants also argue that Plaintiffs' FLSA claims fail regardless of coverage, because Plaintiffs have not carried their burden of proving unpaid overtime.

### A.    Enterprise coverage.

Enterprise coverage under the FLSA applies if the defendant employer: "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i).  The statute's $500,000 gross sales requirement is determinative of Defendants' enterprise coverage here.  Defendant Quality Removal's 2012 and 2013 tax returns reported $195,343 and $214,383 in gross receipts, respectively, and Defendants assert that Quality Removal's gross sales will not reach or exceed $500,000 in 2014.  ECF No. [22-1], Garcia Decl.  There is no other evidence in the record of Quality Removal's annual gross sales volume.

As the parties defending summary judgment, Plaintiffs have the burden of responding to Quality Removal's tax returns with "relevant and admissible evidence sufficient to rebut this showing."  *Scott v. K.W. Max Investments, Inc.*, 256 F. App'x 244, 247 (11th Cir. 2007).  Plaintiffs have not carried this burden.  Plaintiffs point to no evidence in the record—admissible or otherwise—to support the contention that Quality Removal under-reported its gross sales by $304,657 in 2012 and $285,617 in 2013.  Plaintiffs have no ledgers, balance sheets, phone records, mileage reports, receipts, or bank statements.  Instead, Plaintiffs opine that Quality Removal must have grossed far more than it reported to the IRS, based on Plaintiffs' own estimation that Quality Removal conducted an average of 24 removals per day, at $100 per removal.  Plaintiffs, however, have not reached this estimate by relying on relevant or admissible evidence.  Instead, Plaintiffs estimate that, because they each conducted an average of six removals per day, they "believe" an additional driver had a comparable workload and they

"[a]ssum[e]" that Defendant Garcia conducted an additional six removals each day, coming to a total of 24 removals per day, on average.  ECF No. [24], Pls.' Resp. at 7–8.

In *Josendis v. Wall to Wall Residence Repairs, Inc*., the Eleventh Circuit considered and rejected similarly speculative contentions about an FLSA defendant's tax returns.  In *Josendis*, the defendant's tax returns showed gross sales totaling less than $500,000 per year during the relevant period.  662 F.3d at 1317.  The plaintiffs attempted to rebut this evidence with affidavits describing a "belief" that the defendant stood to earn more than $500,000 from various projects. *Id.*  The Eleventh Circuit found this insufficient to withstand summary judgment, because, "unreliable conjecture" that the defendant grossed a higher volume of sales than it reported, "presented as a 'belief' without any basis in ascertainable fact, was not the type of admissible evidence required to survive a motion for summary judgment . . . . "  *Id.* at 1318.  *See also Arilus v. DiEmmanuele, Jr.*, 895 F. Supp. 2d 1257, 1260–62 (S.D. Fla. 2012) (granting summary judgment for FLSA defendant whose tax returns showed gross receipts of less than $500,000, because the plaintiffs' only rebuttal evidence consisted of speculative testimony on unreported cash payments).

Like the *Josendis* plaintiffs, Plaintiffs here have no credible or admissible evidence rebutting the Defendants' tax returns.  Instead, Plaintiffs rely entirely on speculative inferences on Quality Removal's total annual sales volume.  These inferences are insufficient to carry Plaintiffs' burden of raising a material question of fact on a necessary element of their claim. Therefore, Defendants are not subject to FLSA enterprise coverage as a matter of law, and the Court need not address the parties' other arguments on enterprise coverage.

### B.    Individual coverage.

Initially, Defendants argue that Plaintiffs have waived any claim for individual coverage under the FLSA by failing to explicitly use the term "individual coverage" in their Complaint. Defendants claim that "[t]he failure to clearly plead individual coverage in the Complaint requires the conclusion that the Plaintiffs cannot now rely on that theory of proof."  ECF No. [22], Defs.' Mtn. at 3.[5]   To the contrary, Rule 8 requires only a "short and plain statement" of Plaintiffs' claim, sufficient to place Defendants on notice of the relief sought.  Therefore, Plaintiffs' failure to use the legal term "individual coverage" in their Complaint—which clearly sought relief under the FLSA—does not, in and of itself, deny them this particular type of statutory coverage.  As the Supreme Court has made clear, "under the Federal Rules of Civil Procedure, a complaint need not pin a plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).  *See also Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989) ("A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.").

---

[5] In support of this argument, Defendants cite to several Eleventh Circuit decisions that held that a party waived a claim or category of damages by failing to plead it.  *See* ECF No. [22] at 3 (citing *Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 309 (11th Cir. 2009) and *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004)).  In *Mena v. McArthur Dairy, LLC*, the plaintiff sought unpaid overtime in his complaint, and then argued for minimum wage and straight-time pay for the first time on summary judgment.  352 F. App'x at 307–08.  The Eleventh Circuit affirmed a grant of summary judgment for the defendant, because the plaintiff had had never previously "articulated an argument that should have put [the defendant] on notice of this theory of liability." *Id.* at 308.  And in *Gilmour v. Gates, McDonald and Co.*, the Eleventh Circuit simply held that a plaintiff could not raise an entirely new claim in a summary judgment response.  382 F.3d at 1315.  These cases are inapposite because the Plaintiffs, in seeking individual coverage, are not asserting an entirely new substantive cause of action or seeking a heretofore unmentioned category of damages.

Under the plain language of Rule 8 and well-established precedent, the issue is not, as Defendants contend, whether Plaintiffs specified their precise legal theory in their Complaint. Rather, the issue is whether Plaintiffs' Complaint sufficiently notified Defendants of an FLSA claim predicated in part on engagement in commerce "among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  The Complaint, though not a model of careful drafting, did provide this notice.  Plaintiffs alleged that they were entitled to the protections of the FLSA by virtue of their engagement in interstate commerce.  *See* ECF No. [1], Compl. ¶ 13, 16.  Therefore, Plaintiffs are not barred from individual coverage simply because they did not use that particular legal term of art in their Complaint.  *See Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1377 (S.D. Fla. 2012) ("To be clear, the Court rejects Defendants' call for super detailed factual allegations as to every facet of FLSA coverage.").

Defendants also attack Plaintiffs' substantive entitlement to individual coverage under the FLSA.  Individual coverage applies to a plaintiff who provides evidence that he either "(1) engaged in commerce or (2) engaged in the production of goods for commerce."  *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Because the Plaintiffs have never alleged that they produced goods, they must, to survive summary judgment, present admissible evidence that they were "engaged in commerce" within the meaning of the FLSA. *See D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946) (holding that the employee bears the burden of proof in showing engagement in interstate commerce).

Plaintiffs allege that they engaged in interstate commerce by dropping off bodies at the Miami International Airport, for subsequent transport to other states or countries.  ECF No. [26], Pls.' 56.1 Statement, ¶ 4.[6]  In response, Defendants assert that the mere act of dropping bodies off at an airport for transport to other states or countries is not an "interstate" act within the meaning of the FLSA.  Defendants claim that, because Plaintiffs themselves rarely left Miami-Dade County, and never left the State of Florida, they were simply involved in "local driving," and not interstate commerce.  *See* ECF No. [29], Defs.' Reply Mtn. at 6.

Contrary to Defendants' arguments, the FLSA contains no requirement that a plaintiff physically leave the state to be engaged in interstate commerce.  Indeed, the Eleventh Circuit has explicitly defined "interstate commerce" under the FLSA to include "regularly using the instrumentalities of interstate commerce . . . ."  *Thorne*, 448 F. App'x at 1266 (citing 29 C.F.R. §§ 776.23(d)(2) & 776.24).  *See also Josendis*, 662 F.3d at 1316 (stating that plaintiff had to produce evidence that he "used an item moving in interstate commerce" to obtain individual coverage).  Though this standard is narrower than the full reach of Congress's power to regulate interstate commerce, *see Thorne*, 448 F.3d at 1266, it has nevertheless been applied by this Court to plaintiffs who did not, themselves, leave the state.  *See e.g. Obando v. M & E Investment Properties, Inc.*, No. 11-cv-20318, 2011 WL 4387238 at *2–3 (S.D. Fla. Sept. 20, 2011) (maid's testimony that she regularly answered the phones at hotel and helped guests arrange interstate travel to and from the hotel raised a factual question of individual coverage precluding summary judgment).

---

[6] Plaintiffs also allege that they engaged in interstate commerce by providing "emergency services" and "use of federal highways."  *Id.*  Plaintiffs have provided no case law or other authority that supports the contention that intrastate emergency services and use of federally funded roads constitute interstate commerce within the meaning of the FLSA.

The Department of Labor's FLSA regulations further confirm that Plaintiffs' work—to the extent it involved dropping off bodies at the airport for transit to other states and countries— constituted engagement in interstate commerce.  According to the Department of Labor, "[t]ransportation employees . . . such as truck drivers . . . who regularly and recurrently pick up at rail heads, air, bus, or other such terminals goods originating out of State, or deliver to such terminals goods destined to points out of State . . . are engaged in commerce within the meaning of the Act."  29 C.F.R. § 779.114.[7]  Further, this Court, in construing the motor carrier exception to the FLSA, has also noted that a transportation employee can be engaged in interstate commerce, despite never leaving the state, by virtue of regular and recurrent pickups of goods or persons traveling from out of state.  *See Hernandez v. Brink's, Inc.*, No. 08-20717-CIV, 2009 WL 113406 at *3 (S.D. Fla. Jan. 15, 2009) ("It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an interstate destination."). While this *Hernandez* and similar decisions analyzing the motor carrier exception are not determinative here, as they construed a different provision of the FLSA with an arguably different standard, they are persuasive in establishing the interstate/intrastate nature of Plaintiffs' work in this case.[8]

---

[7] Regulations enacted by the Department of Labor are not binding on this Court; however, they constitute persuasive authority where statutory terms are undefined or ambiguous.  *Josendis*, 662 F.3d at 1299 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843–45 (1984)).

[8] Plaintiffs did not provide the Court with these authorities, and instead based their entire argument on an unpublished Texas decision issued nearly fifty years ago.  Likely because of Plaintiffs' negligible research, Defendants stated, in their Reply, that they "object to the Court doing any legal research or advocating for the Plaintiffs beyond the arguments and authorities submitted by the Plaintiffs, because it is prohibited from doing that." ECF No. [29], Defs.' Reply Mtn. at 1 (citing *City of Aventura v. Fils*, 647 F.3d 1272, 1284–85 (11th Cir. 2011)). This admonishment from Defendants is based on a complete misreading of Eleventh Circuit precedent.  In *City of Aventura*, the court held that a district court could not articulate new factual arguments for a party.  647 F.3d at 1284–85.  The court did not hold, and has never held, that a district court is barred from fully researching the legal issues raised in summary judgment motions in order to properly apply the law.  In fact, this is the district court's job. *See United States v. Dickinson*, 465 F.2d 496, 510 (5th Cir. 1972) ("Judges, after all, are charged with the final responsibility to adjudicate legal disputes.").

In support of their claim that dropping off bodies at the airport for interstate or international shipment is not "interstate commerce," Defendants cite a number of decisions holding that local use of goods shipped over state lines is not "interstate" under the FLSA.  ECF No. [22], Defs.' Mtn. at 12 (citing *Thorne*, 448 F.3d at 1267).  These cases are all inapposite, because they involved the receipt of goods by their ultimate user.  As stated in *Thorne*, "when goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act."  448 F.3d at 1267.  In *Navarro v. Broney Auto. Repairs, Inc.*, for example, local automobile part dealers would order parts from out-of-state sources and hold them until sold in the local market.  533 F. Supp. 2d 1223, 1226 (S.D. Fla. 2008).  This Court found that the "interstate journey" ended when the parts reached the dealers, because the out-of-state shippers of the parts sold them to the dealers, with no intent to reach any individual car owner.  *Id.*

These cases are distinguishable.  Here, unlike in *Thorne* or *Navarro*, Quality Removal did not purchase the items it shipped, or repurpose them for resale.  Rather, Quality Removal contracted with funeral homes to serve as a key component of a journey that neither began nor ended with Quality Removal.  This renders the "ultimate consumer" exception articulated in *Thorne* inapplicable here.  To the contrary, this case is far more similar to that examined by the Eleventh Circuit in *Alonso v. Garcia.*  There, the court concluded that a local laborer who transported chemicals that had previously moved in interstate commerce was "engaged in commerce," because the chemicals "continued to flow in interstate commerce until they reached" the final customers.  147 F. App'x 815, 815 (11th Cir. 2005).[9]  *See also Brennan v. Wilson Bldg.,*

---

[9] Subsequent decisions from this Court have called the viability of *Alonso* into question, in light of the more recent *Thorne* decision.  *See Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368, 1372 (S.D. Fla. 2008).  A close reading of *Thorne* and *Alonso*, however, indicates that the two decisions are distinguishable on their facts.  In *Thorne*, the plaintiff was not engaged in commerce because he engaged in no transactions with any out-of-state vendors, and

*Inc.*, 478 F.2d 1090, 1095 (5th Cir. 1973) (holding that parcels and mail transported by elevator operators "continue[d] to flow in interstate commerce . . . [and] do not come to rest until delivered to the offices of the tenants.").

Defendants also argue that, even if dropping off bodies at the airport constitutes interstate commerce under the FLSA, this was a negligible portion of Plaintiffs' overall duties, and thus was not the sort of regular and recurrent activity covered by the FLSA.  Indeed, the Eleventh Circuit has repeatedly emphasized that indirect or sporadic participation in interstate commerce is not sufficient to invoke the FLSA's protections.  Rather, "for an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by regularly using the instrumentalities of interstate commerce in his work."  *Thorne*, 448 F.3d at 1266.  *See also Josendis*, 662 F.3d at 1316 (to survive summary judgment on individual coverage, an employee must "come forward with evidence, beyond mere speculation, that, as a part of his work duties, he repeatedly traveled to and from . . . job sites outside of Florida or used an item moving in interstate commerce") (citations omitted).

Given the Eleventh Circuit's emphasis on regular and recurrent engagement in commerce, the ultimate question here is whether Plaintiffs' use of the airport was frequent enough to bring them within the FLSA's protections.  There is no bright-line rule establishing how frequently each Plaintiff must have visited the airport to be covered by the FLSA.  *See Boekemeier v. Fourth Universalist Society in the City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) ("The legal standards are not clear as to when a shipment of goods is more than sporadic or occasional.").  Rather, the application of the regular and recurrent rule must be decided on a case-by-case basis, based on the unique facts in the record.

---

simply made local purchases of products that had once moved in interstate commerce.  448 F.3d at 1267.  In *Alonso*, on the other hand, the plaintiff apparently facilitated the interstate flow of goods by taking goods originating from out-of-state and delivering them to customers.  147 F. App'x at 815.

Following this case-by-case approach, courts in this Circuit have found a single interstate contact to be insufficient to qualify as "regular and recurrent." *See Scott v. K.W. Max Investments, Inc.*, 256 F. App'x 244, 248 (11th Cir. 2007) (holding that a single instance of purchasing lumber from another state did not constitute "regular" engagement in interstate commerce); *Seijo v. Casa Salsa, Inc.*, No. 12-60892-Civ, 2013 WL 6184969 at *3 (S.D. Fla. Nov. 25, 2013) ("Traveling to New York once a year is not regular and is therefore insufficient.").   Other courts, however, have found that several contacts per month are at least sufficient to withstand summary judgment. *See Gashlin v. Int'l Clinical Research-US, LLC*, No. 6:12-cv-1526, 2014 WL 3057383 at *3–4 (M.D. Fla. July 7, 2014) (employee's testimony that she, *inter alia*, spoke to out-of-state monitors two or three times a week, and shipped samples out-of-state three or four times a month, raised a fact question sufficient to defeat summary judgment on individual coverage); *Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449, 469–70 (S.D.N.Y. 2006) (holding that two interstate trips over three years by one plaintiff was insufficient, but two to four trips per month for another plaintiff was sufficient); *Boekemeier*, 86 F. Supp. 2d at 287 (employee's use of phone and mail to make between fourteen and thirty major purchases from out-of-state vendors over a five-year period was sufficient).

In light of the preceding authority, Plaintiff Andre Gregory did not possess the "regular and recurrent" contacts with interstate commerce required to invoke individual coverage under the FLSA.   Gregory testified in his deposition that, though he knew Quality Removal made airport runs, he "didn't do many of those, if I even did any.  I may have done one or two.  I don't remember."  ECF No. [26-3], Gregory Dep. at 26.  Courts that have considered such irregular and sporadic contacts have found them insufficient for individual coverage.  *See Scott*, 256 F.

App'x at 248.  Therefore, Plaintiff Gregory is not covered by the FLSA, and Defendants' motion is granted as to him.

Plaintiff Eduardo Bermudez's testimony, however, mandates a different result. Bermudez testified that, each week, he delivered between five and seven bodies to the Miami International Airport.  ECF No. [26-4], Bermudez Dep. at 57.  Bermudez testified that he personally completed paperwork for each body, and that this paperwork typically identified the bodies' destinations as other states, most frequently, New York.  *Id.* at 56.  Bermudez said that he believed he did many more airport deliveries than Gregory because Bermudez took the night shift, and "[t]he airport runs were usually done at night for some reason."  *Id.* at 58.

Bermudez's testimony raises a material issue of fact on his coverage under the FLSA. Though, as previously noted, the standard for regular and recurrent interstate commerce under the FLSA is determined on a case-by-case basis, five to seven interstate contacts per week is sufficient.  Therefore, if a jury were to credit Bermudez's testimony, he would be covered as an individual under the FLSA.  Material issues of fact regarding the applicability of a particular individual's coverage under the FLSA preclude summary judgment.  *See e.g. Obando*, 2011 WL 4387238 at *3.  Therefore, Defendants are not entitled to summary judgment against Bermudez on the basis of individual coverage.

### C.    Entitlement to Overtime and Minimum Wages.

This leaves the question of whether Bermudez is entitled to FLSA overtime and minimum wages.  Defendants argue that he is not.  Here, Defendants rely on the distinction between an employee who is "engaged to wait" and one who is "waiting to be engaged."  Under long-standing FLSA precedent, time in which an employee is "engaged to wait", that is, "time spent primarily for the benefit of the employer and his business," is compensable.  *See Armour &*

16

*Co. v. Wantock*, 323 U.S. 126, 132 (1944).  Time in which an employee is "waiting to be engaged," i.e., time that the employee can use "effectively for his or her own purposes," is not. *Lurvey v. Metropolitan Dade Cnty.*, 870 F. Supp. 1570, 1578 (S.D. Fla. 1994) (quoting *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989)).  "The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities." *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992).

The difference between time "engaged to wait" and "waiting to be engaged" is highly fact-specific, and is "dependent upon all the circumstances of the case." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944).  The Eleventh Circuit has held that a district court analyzing this distinction should consider "the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Birdwell*, 970 F.2d at 808 (quoting *Skidmore*, 323 U.S. at 137).  This Court has also considered factors such as "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employees' movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Lurvey*, 870 F. Supp. at 1576 (citing *Owens v. Local No. 169*, 971 F.2d 347, 350 (9th Cir. 1992)).  "*It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist.*"  *Id.* (quoting *Birdwell*, 970 F.2d at 807–08) (emphasis in original).

Plaintiffs, citing several of these factors, argue that any time they spent waiting for Garcia's call at home was, in fact, time in which they were "engaged to wait." ECF No. [24], Pls.' Resp. Mtn. at 12–13. Plaintiffs note that their scheduled shifts started promptly, that they were required to remain in uniform for the entire shift, that they could not leave their homes during their shifts except for work-related purposes, that Garcia monitored their movements with GPS locating devices to ensure that they remained at home except for pickups, and that calls to work came in frequently during their shifts. *Id.* For these reasons, Plaintiffs argue that their waiting time was so heavily restricted that they could not use it for their own purposes, and therefore, that their entire shifts are compensable under the FLSA. In response, Defendants merely argue that Plaintiffs "admitted that they were having sex and pursuing their own interests" during their waiting time, and that therefore, this time was not compensable. ECF No. [29], Defs.' Reply Mtn. at 10.

Initially, it is not clear from the record that Plaintiffs—as Defendants contend— "admitted" to engaging in personal activities during their waiting time. In fact, to the contrary, it appears that Plaintiffs consistently testified that they were prohibited from using that time effectively for their own purposes by Quality Removal's heavy restrictions on the use of that time. For example, Bermudez testified that "[t]here was no dead time," given the volume of orders he typically received. ECF No. [26-4], Bermudez Dep. at 147. Bermudez further testified that "[s]ometimes I felt like I was at – you know, jailed at my own house," due to the geographical restrictions on his movement. *Id.* at 156.

Tto the extent that Plaintiffs did engage in some personal activities during their waiting time, this is only one of many considerations in the Court's fact-specific determination of whether Plaintiffs' waiting time is compensable. Other factors, as previously noted, include the

degree of restrictions on Plaintiffs' movement, the frequency of Garcia's calls, *see Lurvey*, 870 F. Supp. at 1576, and the working agreement between the parties, *see Birdwell*, 970 F.2d at 808. Taking the record evidence in the light most favorable to the non-moving party, i.e., by crediting Bermudez's testimony, these factors favor Bermudez.

Bermudez's twelve-hour shifts were not simple on-call periods characterized by infrequent calls and a considerable degree of autonomy, like those instances of on-call time found to be non-compensable in *Birdwell*, *Lurvey*, and similar cases.  *See Birdwell*, 970 F.2d at 810 (detectives required to carry a pager and prohibited from drinking alcohol during on-call time were not entitled to FLSA wages for that time, because they never actually received a call and "could do anything they normally did so long as they were able to respond to a call promptly and sober"); *Lurvey*, 870 F. Supp. at 1579–83 (plaintiffs receiving an average of less than one call per week not entitled to FLSA overtime).  Rather, these shifts were scheduled work periods that Bermudez was required to spend at home, in uniform, awaiting Garcia's frequent calls.

These facts render this specific case more like *Cross v. Arkansas Forestry Comm'n* than *Birdwell*.  In *Cross*, the plaintiffs were required to spend their on-call time monitoring hand-held radios, and to respond immediately to calls.  938 F.2d 912, 917 (8th Cir. 1991).  The Eighth Circuit held that this time was compensable, because the restrictions on the employees' activity were such that "the employees' ability to entertain in their homes, attend social gatherings, attend church services, or engage in other personal pursuits is limited."  *Id.  See also Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, (6th Cir. 1992) ("From our survey of the law in this area, we conclude that on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using that time for personal pursuits."); *Renfro v. City of Emporia*, 948 F.2d 1529, (10th Cir. 1991) (firefighters who received an average of

19

three to five calls per twenty-four-hour on-call period were entitled to FLSA overtime, because the frequency of the calls restricted the firefighters' ability to use that time for personal pursuits); *Barraza v. Pardo*, 985 F. Supp. 2d 1369, 1373 (S.D. Fla. 2013) (factual dispute on whether live-in housekeeper was "engaged to wait" or "waiting to be engaged" precluded summary judgment).

In short, if a jury were to believe Bermudez's characterization of his waiting time, then this time would be compensable. Therefore, Bermudez has raised a material issue of fact on his entitlement to overtime pay and minimum wages under the FLSA.

Defendants have also argued that Bermudez's documentation of his hours worked is insufficient to carry his burden of proof in showing that he worked uncompensated overtime. *See* ECF No. [22], Defs.' Mtn. at 20. This argument appears to be predicated on Defendants' belief that Bermudez should be compensated only for time spent in the actual transport of bodies, and that his waiting time was non-compensable. Because the Court has already determined that material issues of fact preclude a finding in Defendants' favor on this ground, Defendants' burden of proof argument also fails. Further, an FLSA plaintiff's own recollection, even if imperfect, of his overtime hours is sufficient to withstand a motion for summary judgment, particularly where—as here—the defendant's own records are incomplete or non-existent. *See Solano v. A Navas Party Production, Inc.*, No. 09-22847-CIV, 2011 WL 98819 at *11 (S.D. Fla. Jan. 12, 2011) (citing cases).

### D.     Individual Liability.

Finally, Defendants devote a single sentence of their motion to arguing that Garcia may not be held individually liable for FLSA wages because "the Court is without subject matter jurisdiction in this case and also because Garcia's liability is only derivative to that of the

corporate Defendant's liability . . . ."  ECF No. [22], Defs.' Mtn. at 19.  In fact, as previously

established, the Court does have subject matter jurisdiction.  As such, Defendants are not entitled

to summary judgment on Garcia's individual liability on this basis.  Further, it is well-established

that a corporate officer involved in the day-to-day functions of the corporation, or who has direct

responsibility for the supervision of employees, is an employer for the purposes of FLSA

liability.  *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986).  Those criteria are clearly met

here, given Garcia's ownership of Quality Removal, his intimate involvement in the day-to-day

functions of the corporation, and his direct responsibility for supervising his employees. *See* 29

U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest

of the employer in relation to an employee").[10]

### IV.     CONCLUSION.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment with

Incorporated Memorandum of Law is **GRANTED IN PART** and **DENIED IN PART**.  The

Motion is **GRANTED** with respect to Plaintiff Andre Gregory.  The Motion is **DENIED** with

---

[10] In their Reply, Defendants also argue that the FLSA does not apply because the Plaintiffs were not Quality
Removal's employees.  ECF No. [29], Defs.' Reply Mtn. at 4.  Defendants did not raise this argument in their
Motion for Summary Judgment, and therefore, the Court will not consider here. *Martinez v. Weyerhaeuser
Mortgage Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla. 1996) ("[T]he Court finds that the movant may not raise new
arguments in a reply brief."); *see also* S.D. Fla. L.R. 7.1(c).

respect to Plaintiff Eduardo Bermudez.


**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 29th day of October, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record